# IN THE COURT OF APPEALS OF IOWA

No. 20-0168
Filed April 1, 2020

**IN THE INTEREST OF S.E.,**
**Minor Child,**

**D.E., Mother,**
    Appellant,

**J.E., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Linn County, Barbara H. Liesveld, District Associate Judge.

A mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

John J. Bishop, Cedar Rapids, for appellant mother.

Robin L. Miller, Cedar Rapids, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Julie F. Trachta of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**TABOR, Presiding Judge.**

Mental-health needs, substance abuse, and domestic violence often prevent parents from reunifying with their children in cases of abuse or neglect. S.E.'s parents, Dina and Jerrod, faced all three of those major obstacles to resuming care of their now two-year-old son. The juvenile court terminated the parental rights of both Dina and Jerrod under Iowa Code section 232.116(1)(h) (2019). Both parents challenge the State's proof they cannot resume custody of S.E. without the risk of further harm. They also argue termination was not in their son's best interests. After our independent review of the record, we draw the same conclusions from the evidence as did the juvenile court.[1] Despite recent progress, the parents have not shown the ability to maintain "a safe, sober, violence-free home for their child." We thus affirm the juvenile court's termination decision.

## I.      Facts and Prior Proceedings

S.E. was born in August 2017. The next month, the Iowa Department of Human Services (DHS) completed a family assessment identifying domestic abuse by Jerrod against Dina. S.E. remained in the care of his parents for the next year. But in the fall of 2018, the DHS determined the parents were using methamphetamine while caring for S.E. The juvenile court adjudicated S.E. as a

---

[1] We review rulings terminating parental rights de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). While not bound by the juvenile court's fact findings, we give them weight, particularly on credibility claims. *Id.* The State must present clear and convincing evidence to support termination. *In re A.M.*, 843 N.W.2d 100, 110–11 (Iowa 2014). Evidence satisfies that standard if no serious or significant doubts exist about the correctness of conclusions of law drawn from the proof. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

child in need of assistance (CINA) and removed him from parental care in October 2018.

At first, the DHS placed S.E. with his maternal grandmother. Because the grandmother struggled to limit Dina's access to S.E., the DHS soon moved the child to the home of his paternal grandfather. S.E. remained in his grandfather's care through much of the CINA case.[2] The grandfather has qualified as a foster parent and is willing to adopt S.E.

As the juvenile court noted, both parents have "significant mental health needs" that affect their ability to parent. Dina was diagnosed with attention deficit disorder, anxiety with panic attacks, depression, mood disorder, and obsessive compulsive disorder. The DHS worker believed Dina depended emotionally on Jerrod. Jerrod was diagnosed with mood disorder, schizophrenia, depression, and anxiety. Both parents sought medication management from the Abbe Mental Health Center but neither attended individual counseling.

Jerrod's behavior was especially concerning. He directed "angry outbursts" at the DHS workers and even threatened to kill the DHS case manager. The FSRP (family safety, risk, and permanency) providers stopped transporting him to interactions with S.E. in the summer of 2019 because they did not feel safe. An FSRP worker described his demeanor as "very unpredictable."

Closely related to their mental-health challenges, substance-abuse issues hindered their ability to safely parent. Jerrod had long-term addictions to alcohol and methamphetamine. He said, as a teenager, he "would drink from sunrise to

---

[2] S.E. lived with a paternal aunt from December 2018 through April 2019.

sundown." He sought treatment several times but continued to drink to intoxication during the CINA case. Both he and Dina downplayed his current alcohol consumption in their testimony at the termination hearing. Dina's own methamphetamine use coincided with her relationship with Jerrod. She also lied to substance-abuse evaluators about the extent of her use during the CINA case. The district court was concerned they had simply substituted their addiction to methamphetamine to an addiction to alcohol.

The record showed that in late September 2019, both Dina and Jerrod "drank liquor" and "got intoxicated pretty quickly." Jerrod ended up calling 911 to say Dina assaulted him. He described the call as "a petty tactic to get her in trouble." A similar incident occurred earlier that month.

To complete their trifecta of troubles, domestic violence plagued the relationship between Jerrod and Dina. Jerrod was most often the aggressor, according to the record. Jerrod denied this history in his testimony. And Dina minimized the frequency of the violence, which also coincides with their drinking to excess. When confronted with the police report, Dina acknowledged Jerrod punched her while she was holding S.E. in February 2018. Social workers referred Dina to Waypoint, a nonprofit program offering domestic-violence victim counseling. But she did not follow through with that service. The parents' relationship has been "on-again, off-again" but Dina testified she was committed to their marriage. The parents had separate visits with S.E. until September 2019 when they reconciled their relationship.

The parents didn't have their own housing until September 2019. At that point, they pooled their monthly resources (hers from Social Security disability and

his from the East Central Region Mental Health and Disability Services) to rent a two-bedroom house. The location was suitable for visits with S.E. The DHS allowed the parents three, six-hour unsupervised visits with drop-ins. By all accounts, the interactions were positive and the parents met their child's needs. In late November 2019, the DHS offered the parents a fourth visit that would require them to schedule and transport S.E. to his speech therapy appointments. By the time of the termination proceedings in early to mid-December, they had not followed through with those appointments.

The juvenile court drafted a thorough history of the case and concisely explained its reasons for granting the State's petition for termination of parental rights. The parents filed separate petitions on appeal.

## II. Analysis

We examine termination cases in three steps. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, we decide whether the State proved a ground for termination in section 232.116(1). *Id.* After finding that proof by clear and convincing evidence, we consider whether termination is in the best interests of the child by applying the factors in section 232.116(2). *Id.* If the best-interests test is met, we turn to the permissive factors listed in section 232.116(3) to see if any stand in the way of terminating. *Id.*

### A. Statutory Basis for Termination

Both Dina and Jerrod contend the State failed to offer clear and convincing evidence to support termination under Iowa Code section 232.116(1)(h).[3] They

---

[3] Paragraph (h) allows for termination if:
The court finds that all the following have occurred:

focus on the fourth element—proof that S.E. could not be returned to their care at the time of the termination hearing. *See M.W.*, 876 N.W.2d at 223–24.

Contrary to the parents' position, the State offered strong evidence neither is ready to resume the role of full-time parent. The record shows after a year of services, the parents still could not care for S.E. without ongoing DHS involvement. *See A.M.*, 843 N.W.2d at 111. Despite their progress in securing long unsupervised visits, S.E. had never stayed overnight with them or had a trial home stay. The service providers were on the cusp of recommending the next step, when the September 2019 police calls renewed their fear of maltreatment based on substance abuse and domestic violence.

Significantly, none of the professionals involved with the case felt comfortable recommending reunification. *See id.* (noting DHS caseworker, all service providers, and guardian ad litem (GAL) recommended termination); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (same). Those professionals expressed concern the parents had not adequately addressed their violent history—or the effect of substance use and mental-health challenges on their ability to raise S.E. One of the FSRP workers opined the parents had not seized the opportunity during

---

(1) The child is three years of age or younger.

(2) The child has been adjudicated [CINA under] section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h).

the open CINA case to address their unresolved mental-health issues, noting "the ball hasn't been rolling the whole time." The GAL acknowledged the parents made "some positive steps" in the last thirty days, but did not see the kind of "long-term change" necessary to avoid placing S.E. at risk. Giving due respect to their expert views, we find clear and convincing evidence in the record to support termination for both parents under section 232.116(1)(h).

### B.    Best Interests/Permissive Factors

Both Dina and Jerrod argue termination is not in S.E.'s best interests. But neither of them actually discuss the factors in section 232.116(2). Instead, they conflate the best-interests argument with the permissive factor weighing against termination in section 232.116(3)(c) (allowing juvenile court to deny petition when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship").

Both parents argue their relationship with S.E. is so close that termination would damage his well-being. *See* Iowa Code § 232.116(3)(c). Indeed, the record shows a loving connection between S.E. and his parents. The FSRP worker described the child as "well-bonded" and "happy to see his parents" during their interactions. The juvenile court also "acknowledge[d] that there is an existing bond." But that said, we must decide whether the disadvantage of termination overcomes the parents' continuing inability to provide S.E. with a safe, stable, and substance-free environment. *See D.W.*, 791 N.W.2d at 709.

The burden is on the parents resisting termination to prove the permissive factors under section 232.116(3). *In re A.S.*, 906 N.W.2d 467, 476–77 (Iowa 2018). Like the juvenile court, we find the parents fail to meet that burden. S.E.

shows signs of trauma from the removal and continuing upheaval in his life. His grandfather has sought play therapy for S.E because the two-year-old is often unable to regulate his emotions—thrashing his head and crying uncontrollably. The parents have not shown a similar commitment to securing therapy for S.E. Despite their loving intentions, the parents have not made enough progress to delay permanency for S.E. Section 232.116(3)(c) did not compel a different outcome under these circumstances.

**AFFIRMED ON BOTH APPEALS.**